IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 10-cv-00362-PAB

BIG O TIRES, LLC, a Nevada limited
liability company f/k/a BIG O TIRES, INC.,
a Colorado corporation,

      Plaintiff,

v.

FELIX BROS., INC., a California corporation,
RALPH FELIX, an individual,
ARMIDA FELIX, an individual,
ANGEL FELIX, an individual, and
MARIA FELIX, an individual,

      Defendants.

---

## ORDER

---

      This matter is before the Court on plaintiff's motion for preliminary injunction
[Docket No. 45] and defendants' motion to dismiss, to transfer venue, or, in the
alternative, to stay the proceedings [Docket No. 43]. On April 1, 2010, defendants filed
their motion to dismiss, transfer, or stay the action. On April 6, plaintiff filed its motion
for preliminary injunction regarding the in-term covenant not to compete [Docket No.
45]. The motions are fully briefed, and the Court held a joint hearing on those motions
on June 17, 2010. Thereafter, the parties filed supplemental briefs [Docket Nos. 80,
81]. The motions are ripe for disposition.

## I. BACKGROUND

Plaintiff Big O Tires, LLC ("Big O") "is a retail tire franchisor with approximately 500 independently-owned and operated locations in twenty states, each doing business as 'Big O Tires,' selling tires, wheels, shock absorbers, and other automotive goods and services." O'Neil Decl. [Docket No. 45-2] at 1, ¶ 2. Plaintiff's Western Division Vice President Richard S. O'Neil declares that the "relationship between Big O and each of the franchised locations is governed by franchise agreements that allow the franchisees, for a term of years, to use Big O's marks, trade dress, and licensed methods in exchange for, among other things, payment of royalties." O'Neil Decl. [Docket No. 45-2] at 1-2, ¶ 2.

On June 30, 1999, defendant Felix Bros., Inc. entered into a Big O franchise agreement ("Quartz Hill Agreement") and opened a Big O franchise in Quartz Hill, California. *See* Docket No. 1-1 at 8. Defendants Ralph, Armida, Angel, and Maria Felix were all parties to the Quartz Hill Agreement. Ralph and Armida Felix own 70% of defendant Felix Bros., with Angel Felix owning the remaining 30%. *See* Docket 1-1 at 47. On April 25, 2001, Manzano, Inc. became a Big O franchise in Palmdale, California ("Palmdale Agreement"). *See* Docket No. 1-3 at 8. Ralph Felix owns 51% of Manzano. *See* Docket No. 1-3 at 43. Ralph and Armida Felix, as guarantors of Manzano, signed the Palmdale Agreement and agreed not to compete with Big O during the term of the Palmdale Agreement ("in-term covenant not to compete"). *See* Docket No. 1-3 at 26.

On August 23, 2001, Felix Tires, Inc., with Ralph and Armida Felix as guarantors, became a Big O franchise in Lancaster, California ("Lancaster Agreement").

*See* Docket No. 1-2 at 4.  Pursuant to the Lancaster Agreement, Ralph and Armida

Felix agreed, as guarantors of Felix Tires, agreed not to compete with Big O during the

term of the Lancaster Agreement.  *See* Docket No. 1-2 at 27.  Ralph and Armida each

own 50% of Felix Tires.  *See* Docket No. 1-2 at 45.

Defendant Ralph Felix gave notice to plaintiff by letter dated December 14, 2009

that Felix Bros. did not intend to renew the Quartz Hill franchise.  *See* Pl.'s Ex. 10 to

March 1, 2010 Hearing; *see* Pl.'s Ex. 7 to June 17, 2010 Hearing.[1]  The last day of the

Quartz Hill franchise term was December 31, 2009.  *See* Docket No. 52-2 at 2, ¶ 4.

Within the December 14 letter, Mr. Felix also requested early termination of the

Palmdale and Lancaster Agreements, *see* Pl.'s Ex. 10 to March 1, 2010 Hearing, which

would have expired on April 25 and August 23, 2011 respectively.  *See* Ex. Pl.'s Exs. 3

and 4 to March 1, 2010 Hearing.  Plaintiff responded to Mr. Felix's letter by letter dated

January 15, 2010.  Pl.'s Ex. 11 for March 1, 2010 Hearing.  That response "accept[ed

the] request not to renew the franchise agreement for Quartz Hill," but noted that Mr.

Felix "still has during-term non-compete obligations as well as post-termination

obligations under the franchise agreement (e.g., turning over phone numbers and

customer lists, paying all debts to Big O and local advertising group) with which we fully

expect him to comply."  *Id.*  Plaintiff also "ask[ed] that he advise [it] of his plans to

dispose of the assets for this location."  *Id.*

---

[1]Mr. O'Neil testified at the June 17, 2010 hearing that he did not receive the letter until December 28, 2009, which is indicated by a date stamp on the first page of the letter.  *See* Pl.'s Ex. 10 to March 31, 2010 Hearing.

In January 2010, Mr. Felix "began the process of de-identifying [his] Quartz Hill tire store from all Big O brand names and trademarks . . . ." Docket No. 52-2 ("Felix Decl.") at 2, ¶ 5. He registered the Quartz Hill store under the name Budget Tires and Automotive. *See id.* On February 19, 2010, Big O filed this lawsuit and, on February 23, 2010, filed a motion for temporary restraining order and preliminary injunction [Docket No. 9],[2] seeking removal of all Big O trademarks and trade dress and return of proprietary information from the Quartz Hill store. Moreover, Big O sought enforcement of the in-term covenants not to compete in the Palmdale and Lancaster Agreements. Although they have de-identified Budget Tires and Automotive and returned proprietary information, defendants continue to engage in a tire business at the Quartz Hill location. *See* Docket No. 45-2 at 5.

The Quartz Hill Agreement contains a "Post Termination Covenant Not to Compete," which provides that

> [i]f Franchisee terminates this Agreement other than in a manner prescribed in Section 19.03 or if this Agreement is terminated for 'good cause' as defined in Section 19.01, Franchisee and its guarantors covenant that they shall not directly or indirectly, for a period of two (2) years after the Termination Date of this Agreement, engage in any business, other than as a Franchisee of the Big O System, which offers or sells tires, wheels, shock absorbers, automotive services, or other products or services which compete with Big O Products and Services within a ten (10) mile radius of the

---

[2]The Court held a hearing on the motion for temporary restraining order on March 1 and 2, 2010. On March 2, the Court granted that portion of the plaintiff's motion seeking return of the Quartz Hill franchise's customer list and transfer of the location's telephone number back to plaintiff. *See* Docket No. 30; *see also* Docket No. 31. The Court denied plaintiff's request to enforce the in-term covenant not to compete on the grounds that plaintiff failed to meet its burden of showing a likelihood of success on the merits, a likelihood that it would suffer irreparable harm, and that the equities balanced in favor of issuing an injunction. *See* March 2, 2010 Hearing Tr. [Docket No. 42] at 112-17.

> Premises or within a ten (10) mile radius of any other Big O Store which was
> operational or under construction on the Termination Date. . . .

Docket No. 1-1 at 27-28, § 17.04.  Big O does not contend that the Agreement was

terminated in a manner that implicates Section 17.04.  As a result, Big O is not trying to

enforce this clause against defendants.  Therefore, it would appear that defendants,

having complied with their other post-termination obligations, would be free to run a

competing tire business at the Quartz Hill location.  Defendants, however, are operating

Big O franchises under still-operative contracts at Palmdale and Lancaster.  Thus,

plaintiff's motion is premised on the assertion that defendants' ongoing business at the

Quartz Hill location violates the in-term non-compete provisions of the Palmdale and

Lancaster Agreements.

The in-term covenant not to compete in the Palmdale and Lancaster Agreements

reads as follows:

> Except for any businesses already operating and identified on the Summary
> Pages, during the term of this Agreement, Franchisee and any guarantor(s)
> hereof covenant, individually, not to engage in or open any business, at any
> location, other than as a Franchisee of the Big O System, which offers or
> sells tires, wheels, shock absorbers, automotive services, or other products
> or services which compete with Big O Products and Services.  The purpose
> of this covenant is to encourage Franchisee and any guarantor(s) hereof to
> use their best efforts to promote the Big O System, its Products and
> Services, to protect its Information and trade secrets, and to generate a
> successful business at the Store.

Ex. 2 to Compl. [Docket No. 1] at 19, § 17.01; Ex. 3 at 18, § 17.01.

In addition to its argument that defendants are violating the in-term covenant not

to compete simply by operating Budget Tires and Automotive at the Quartz Hill location,

Big O contends that defendants are diverting customers from their Big O stores in

Palmdale and Lancaster to the Quartz Hill location.  Although one Big O witness

testified about an affidavit from a Big O employee who made pretext calls to the Lancaster and Palmdale stores to determine whether the employees there would refer a supposed customer to Budget Tires and Automotive, that affidavit was not introduced at the hearing.  The only evidence of diversion came from Mr. Edgar Aguilar, an employee at the Palmdale Big O location, who testified regarding a phone call he received from an individual claiming to be stranded with a flat tire in Quartz Hill.  Mr. Aguilar estimated that the distance between the Quartz Hill location and the Palmdale Big O franchise was approximately 15 miles.[3]  In light of the fact that the individual claimed to have a flat tire and therefore it would have been unsafe for the individual to try to drive to the Palmdale Big O store, Mr. Aguilar referred him to the nearby Budget Tires store.

At the June 17 hearing on Big O's motion for preliminary injunction, Mr. Ralph Felix testified telephonically that he has no incentive to reduce his efforts to sell products at the Palmdale and Lancaster stores.  Mr. Felix testified that he is working seven days each week exclusively at the Palmdale and Lancaster locations and emphasized that each "store needs to meet their numbers and they need to increase sales."[4]  Moreover, he testified that he has instructed his Lancaster and Palmdale employees to "keep the customers" and, if they absolutely must refer a customer to

---

[3]The driving distance from the Quartz Hill location to the Palmdale location is 12.84 miles and to the Lancaster location is 14.97 miles.  *See* Pl.'s Ex. 9 to March 1, 2010 Hearing.

[4]During the hearing on the motion for temporary restraining order, Mr. Felix stated that "the stores are in their own market and they are supported by [themselves], so it would be a detriment for me not to run the stores at a hundred percent or more." Docket No. 45-3 at 5-6.

another store, to make sure it is a Big O store.  With that said, while still Big O franchisees, defendants will continue to have access to Big O proprietary information. *See* Docket No. 45-2 ("O'Neil Decl.") at 3, ¶ 8.  Big O is concerned that defendants can use that information to the competitive advantage of Budget Tires and Automotive.

## II.  ANALYSIS

### A.  Defendants' Motion to Dismiss, Transfer, or Stay the Action

Defendants request that, prior to resolving the motion for preliminary injunction, the Court transfer venue pursuant to 28 U.S.C. § 1406(a) or stay the proceedings in light of ongoing litigation in state court in California [Docket No. 43].  The Court will address the motion to transfer venue and the motion to stay separately.

#### 1. *Improper Venue*

Defendants contend that venue in this Court is improper, invoking 28 U.S.C. §§ 1391 and 1406 and Federal Rule of Civil Procedure 12(b)(3).  Generally, the question of whether venue is proper in a particular judicial district is determined by reference to the requirements of the relevant venue statute.  *See* 14D Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* § 3804 (2009).  Big O's action raises federal claims and, therefore, implicates the venue provisions of 28 U.S.C. § 1391(b), which provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

7

Section 1406(a) of Title 28 provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* Fed. R. Civ. P. 12(b)(3) ("[A] party may assert the following defenses by motion: . . . improper venue."). Because there is no allegation that any defendant resides, or may be found, in this district, defendants argue that venue is improper in this district because a "substantial part of the events or omissions giving rise to the claim" did not occur in the district nor is "a substantial part of property that is the subject of the action . . . situated" in the district.

The Agreements at issue, however, contain a "Governing Law" clause which states that the parties "consent to . . . venue in Denver, Colorado." *See* Verified Compl. [Docket No. 1] ("Compl."), ex. 2, § 29.01. Defendants believe that the clause is insufficient to establish this district court as a proper venue for this action, arguing that the clause is only permissive and that, in this circuit, forum and venue clauses with permissive language are not enforced. *See* Docket No. 43 at 6-7 (citing *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (10th Cir. 2002); *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)).

However, defendants misunderstand the relevance of the case law they cite. The cases proffered by defendants, as well as others on the subject of mandatory versus permissive forum-selection clauses, *see, e.g.*, *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578 (10th Cir. 1997); *Milk 'N' More, Inc. v. Beavert*,

963 F.2d 1342 (10th Cir. 1992), all involve situations where a case ended up in a forum that a party argued was not contemplated by the forum-selection clause in question. For example, in the *K & V Scientific* case, the plaintiff filed an action in New Mexico, but the clause in question stated that "[j]urisdiction for all and any disputes arising out of or in connection with this agreement is Munich."  *K & V Scientific*, 314 F.3d at 496. Likewise, in *Excell*, the plaintiff challenged removal to a Federal District Court in light of contract language which named the State court as the proper venue.  *Excell*, 106 F.3d at 320; *see also Milk 'N' More*, 963 F.2d at 1343, 1346 (holding that remand to State court was appropriate where mandatory forum-selection clause placed venue in a specified county of the State).  None of these cases involve the situation presented here, where a party seeks to have the case transferred out of a forum contemplated by the relevant contract clause.

Section 29.01 of both the Lancaster and Palmdale Agreements contemplates that the Federal District Court in Denver, Colorado qualifies generally as a permissible venue.  The clause in question – providing that the parties "consent to . . . venue in Denver, Colorado" – is one of "geographic" rather than "sovereign" distinction.  *See Am. Soda, LLP v. U.S. Filter Wastewater Group*, 428 F.3d 921, 925-26 (10th Cir. 2005).  As a consequence, this Court, located in Denver, Colorado, is a permissible venue to which defendants consented through § 29.01.  In spite of this, defendants argue that a combination of choice-of-law doctrines and California law operate to invalidate the language of § 29.01.  Defendants believe that this outcome is commanded by California Business and Professions Code § 20040.5, which states that "[a] provision in a

franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5 (West 2009).

Even if California law governed this case, § 20040.5 does not address the present situation. According to its very terms, § 20040.5 applies to provisions that *restrict* venue to a forum outside of California, not to provisions that *permit* or *consent to* outside forums. In other words, by its plain meaning, § 20040.5's prohibition against "provision[s] in a franchise agreement restricting venue to a forum outside this state" only addresses provisions that would prevent litigation from being brought within California. Section § 29.01 of the franchise agreement at issue in this case does not act as such a bar. Rather, as discussed below, it only serves as a prospective consent to venue – that is, waiver of the right to challenge improper venue – in a Court located in Denver, Colorado.

There do not appear to be any cases that have dealt with the particular issue of § 20040.5's application to provisions which consent to venue in a court outside of California. The Court need not decide the more difficult question of whether the California legislature has the authority to prohibit such consent-to-venue clauses, for that does not appear to be its intent in passing § 20040.5. Rather, "[b]y voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, § 20040.5 ensures that California franchisees may litigate disputes regarding their franchise agreement in California courts." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (explaining that legislative history indicates that, in passing § 20040.5, legislators were

concerned about franchise agreements, which by mandatory terms, forced franchisees to litigate in out-of-state forums). In other words, the statute does not guarantee California franchisees that they will litigate disputes in California; it merely ensures that they will have the opportunity to do so.

The Lancaster and Palmdale Agreements also provide that "the parties consent to the exclusive jurisdiction of either Colorado state courts or the United States Federal District Court for the District of Colorado for any litigation relating to this Agreement or the operation of the Franchised Business thereunder." *See* Docket No. 1-2 at 39, § 29.02. Even assuming this provision constitutes a mandatory forum selection clause, it does not render this district an improper venue. *See K & V Scientific*, 314 F.3d at 499 ("Generally speaking, the circuits that have addressed the issue are in agreement that ' . . . where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.'"). Even if § 20040.5 were to apply and render § 29.02 of the Agreement void,[5] § 29.01 would remain. *Cf.* Docket No. 1-2 at 39, § 30.01

---

[5]Defendants also contend that there was no meeting of the minds regarding the provision of the Agreement requiring litigation to occur in Colorado, which can only refer to § 29.02, as § 29.01 does not limit venue to Colorado. In support of that argument, defendants cite a California State Disclosure Addendum that provides that the "Franchise Agreement requires application of the laws of the State of Colorado and only permits you to sue us in Colorado. These provisions may not be enforceable under California law," Ex. A to June 17 Prelim. Inj. Hearing; *see* Docket No. 43-3 at 3, ¶ 6, and rely upon *Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999). The *Laxmi* court found that a conflict between an "out-of-state forum provision in the franchise contract [that] . . . undeniably runs afoul of section 20040.5 of the California Franchise Relations Act" and a mandatory forum selection clause in an arbitration provision evidenced that there was no meeting of the minds regarding the forum selection clause. *See Laxmi*, 193 F.3d at 1097 ("The salient point is that . . . there is no evidence that [defendant] ever indicated that it would insist upon an out-of-state forum despite the

11

(severability clause).  Moreover, if the Court were to accept defendants' argument that comparison of § 29.01 and § 29.02 creates ambiguity to be construed against the drafter, "the clause would be deemed permissive." *K & V Scientific*, 314 F.3d at 500.

The provisions upon which defendants base the present motion all involve the *propriety* of venue.  The general venue statute, § 1391, indicates where venue is proper.  Rule 12(b)(3) allows dismissal when the venue requirements of § 1391 have not been met, in other words, when venue is improper.  And § 1406 permits a district court which lacks proper venue to transfer, rather than dismiss, the case to a district where venue is proper.  Of critical importance in this case is the proposition that "[i]mproper venue is of course a defense personal to a party and may be waived." *Thompson v. United States*, 312 F.2d 516, 519 (10th Cir. 1962) (citing *Freeman v. Bee Machine Co.*, 319 U.S. 448 (1943)).  Moreover, "[i]t is well settled that venue provisions are subject to contractual waiver." *United States ex rel. B & D Mechanical Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d 1115, 1117 (10th Cir. 1995) (citing *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315 (1964)).  In the present case, the consent-to-venue clause in § 29.01 of the franchise agreement acts as a prospective contractual waiver of defendants' right to contest improper venue in this action.  The exclusive jurisdiction provision is either enforceable, resulting in this district being a proper venue, or it is not, thus leaving the waiver of § 29.01 intact and resulting in the same outcome.  Such a waiver precludes defendants from now arguing that venue is

contravening California law.").

improper.  *See* 14D Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3829 (2009).[6]

### 2.  *Motion for Stay*

Defendants argue that, if venue is found to be permissible, the Court should stay the action because of an ongoing action filed by certain of the defendants and others against plaintiff in California state court.  Although there are overlapping issues in the two actions, defendants have not argued that plaintiff's claims in this case constitute

_____

[6]Defendants contend that enforcement of the forum selection clause would be unreasonable and, therefore, that it is unenforceable pursuant to *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  Defendants rely on the second of three alternative bases cited by *Bremen*, namely, that a forum selection clause is unenforceable if it will deprive a party of his day in court.  *See Farhang v. Indian Institute of Technology*, No. 08-02658 RMW, 2010 WL 519815, at *9 (N.D. Cal. Jan. 26, 2010) ("[T]he Supreme Court has made clear that 'the party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'") (quoting *Bremen*, 407 U.S. at 17-18, *overruled in part on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007)).  This argument could be viewed as indirectly raising a request for transfer pursuant to § 1404(a).  *See Cf. Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 18-29 (1988) ("Although we agree with the Court of Appeals that the *Bremen* case may prove 'instructive' in resolving the parties' dispute, we disagree with the court's articulation of the relevant inquiry as 'whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*.' Rather, the first question for consideration should have been whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue . . . .' For the reasons that follow, we hold that it does.") (citations omitted); *see* 14D Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3829 (2009) ("[A] defendant who has waived his or her objection to improper venue has not necessarily waived the right to seek a transfer of venue under Section 1404(a) of Title 28 of the United States Code.").  Although the Court is empowered to take up that issue on its own motion, *see Americananglian Environmental Technologies, L.P. v. Doherty*, 461 F. Supp. 2d 359, 363 (E.D. Pa. 2006); *Banco de Seguros del Estado v. Employers Ins. of Wausau*, 171 F. Supp. 2d 330, 332 (S.D.N.Y. 2001); *cf. Ferens v. John Deere Co.*, 494 U.S. 516, 530 (U.S. 1990) (referring to the situation where a "court transfers venue on its own motion" pursuant to § 1404(a)), the Court declines to do so at this stage of the proceedings in the absence of a specific request and briefing by the parties.

compulsory counterclaims in the state court action.  *See Align Technology, Inc. v. Bao Tran*, 179 Cal. App. 4th 949, 959-960 (Cal. App. 6 Dist. 2009) (summarizing what constitutes a compulsory counterclaim under California law).  Defendants have not identified any mandatory basis for a stay of this action at this time.  Therefore, the Court will deny defendants' request to stay this action prior to resolution of the motion for preliminary injunction because, if Big O is able to establish that it is suffering irreparable harm, a stay would permit that harm to continue.

### B.  Preliminary Injunction

#### 1.  Standard of Review

In order to obtain a preliminary injunction, the moving party bears the burden of establishing that four factors weigh in its favor: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ----, 129 S. Ct. 365, 374 (2008)).  The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).  Consequently, granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), "is the exception rather than the rule."  *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir.

1984).

"[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *See Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted). As such, there are three types of particularly disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd on other grounds*, 546 U.S. 418 (2006)). Before a court grants relief under one of these three types of preliminary injunctions, a movant seeking such an injunction must make a heightened showing of the four factors. *RoDa Drilling*, 552 F.3d at 1209; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1177 (10th Cir. 2003). Defendants do not argue that any of these types of disfavored preliminary injunctions are implicated in this case.[7]

---

[7]The Court notes that the status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1100 n.8 (10th Cir. 1991) ("In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."), *overruled on other grounds by O Centro*, 389 F.3d at 975-76 (en banc). The last uncontested status between the parties was prior to defendants' notice of its decision not to renew the Quartz Hill Agreement in December of 2009. At that time, and for the ten years preceding it, defendants ran a Big O franchise at the Quartz Hill location. Upon the termination of the Quartz Hill Agreement at the end of December 2009, defendants were essentially opening a new competing business under their own auspices. Plaintiff contests defendants' right to engage in such a business, and an

The Court also notes that the Tenth Circuit has stated that, "where the moving party has established the three 'harm' factors tip *decidedly* in its favor, the 'probability of success requirement' is somewhat relaxed." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original) (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001)). To establish likelihood of success on the merits in such instances, "[t]he movant need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992) (citations omitted).

In *Winter*, however, the Supreme Court held that a more lenient irreparable harm standard in cases where a plaintiff has shown a "strong likelihood of prevailing on the merits" is "inconsistent with [its] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." 129 S. Ct. at 375-76. The Court did not address whether a "somewhat relaxed" likelihood of success standard is permissible when the harm factors weigh decidedly in movant's favor. However, "[o]n its face, *Winter* appears to require a 'likel[ihood]' of success on the merits." *Incantalupo v. Lawrence Union Free School Dist. No. 15*, 652 F. Supp. 2d 314, 322 (E.D.N.Y. 2009); *see International Business Machines Corp. v. Johnson*, 629 F. Supp. 2d 321, 334-35 (S.D.N.Y. 2009) ("The Court pauses to note that at least one authority has read the Supreme Court's recent decision in *Winter* [] as casting doubt on Second Circuit case law allowing parties who cannot

---

injunction preventing them from doing so will not upset the status quo.

show a likelihood of success to obtain an injunction if they show that there are 'questions so serious, substantial, difficult, and doubtful as to make them fair ground for litigation.'") (citing 13 James Wm. Moore et al., *Moore's Federal Practice* § 65.22[5] [c] (3d ed. 2009)). "Notwithstanding the Supreme Court's decision in *Winter* . . . the Second Circuit has continued to allow parties to obtain a preliminary injunction either through: (1) 'a likelihood of success on the merits'; or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *Incantalupo*, 652 F. Supp. 2d at 322 (citations omitted). The Tenth Circuit, which derived its modified likelihood of success approach from the Second Circuit, has also cited *Winter* without addressing its potential impact on the modified approach. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209, n.3 (10th Cir. 2009); *San Luis Valley Ecosystem Council v. U.S. Fish and Wildlife Service*, 657 F. Supp. 2d 1239 (D. Colo. 2009) ("[T]he Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula notwithstanding the *Winter* decision.") (citing *RoDa Drilling*). In this case, however, I need not determine whether the Tenth Circuit's "modified" approach has been called into question by *Winter*, as plaintiff has not shown that the harm elements tip in its favor.

### 2. Likelihood of Irreparable Harm

The Colorado Court of Appeals has stated that

> Injunctive relief is the most common and generally preferred relief for breach of a covenant not to compete. The principal advantage of injunctive relief is that it terminates the prohibited conduct as well as prevents any future damages. In addition, . . . past damages may not only be difficult to prove but may well be inadequate to cause the violator to terminate its prohibited activities. Injunctive relief may be available even though no or only nominal damages have been proven.

17

*DBA Enterprises, Inc. v. Findlay*, 923 P.2d 298, 302 (Colo. App. 1996); *American Indus. Leasing Co. v. Costello*, 418 P.2d 881, 886-87 (Colo. 1966) ("It has been recognized in an injunctive action involving non-competition in the sale of a business, that where one party's wrongful conduct has rendered difficult the assessment of damages, he cannot escape liability simply because it has become difficult to measure the damage with exactness.") (citing *Ditus v. Beahm*, 123 Colo. 550, 232 P.2d 184 (1951)). This preference toward injunctive relief has been stated in terms of a strong presumption. *See Ditus*, 123 P.2d at 185 ("The rule is well settled that: 'Where an established business has been sold with its good will and there is a valid covenant not to compete, a breach is regarded as the controlling factor and injunctive relief follows almost as a matter of course. In such cases the damage is presumed to be irreparable, and the remedy at law is considered inadequate.") (citation omitted); *see also I Can't Believe It's Yogurt v. Gunn*, No. Civ.A. 94-OK-2109-TL, 1997 WL 599391, at *20 (D. Colo. Apr. 15, 1997). However, that presumption can be overcome. *See Harrison v. Albright*, 40 Colo. App. 227, 232 (Colo. App. 1977) ("Irreparable injury is only presumed from breach of a noncompetition clause. The fact of breach is not conclusive evidence of such injury, and the breaching party is not denied an opportunity to dispel that presumption.") (citing *Ditus*, 232 P.2d 184); *see Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1265 n.7 (10th Cir. 2004).

The Court will apply "federal standards applicable to preliminary injunctive relief" pursuant to Federal Rule of Civil Procedure 65. *Lyons v. Jefferson Bank & Trust*, 781 F. Supp. 1525, 1530 (D. Colo. 1992) (citing *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990)); *see Viad Corp. v. Cordial*, 299 F. Supp. 2d 466, (W.D. Pa.

2003) ("Although Viad's request for injunctive relief is based on a state law cause of action, *viz.*, breach of restrictive covenants ancillary to the sale of a business, federal law governs whether an injunction is appropriate. . . .") (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)); *see also Southern Milk Sales, Inc. v. Martin, T.C. Jacoby & Co.*, 924 F.2d 98, 103 (6th Cir. 1991); *cf.* 19 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* § 4513 (2009) (noting that federal standards apply to preliminary injunctions and temporary restraining orders because they are "neither final determinations of the parties' rights nor final relief" in contrast to permanent injunctions which "involve entirely different considerations, and in general may be granted in a diversity case only if authorized by the relevant state law"). Even if application of federal standards were to lead to a different result than Colorado law, the Court would apply federal preliminary injunction standards. *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (holding that Fed. R. Civ. P. 65 is a procedural rule and applying it in a case arising out of a covenant not to compete where the state "law presume[d] that injunctions are appropriate remedies and that they should issue except in limited cases").

Here, Big O requests a preliminary injunction and, therefore, unlike a final determination on the covenant at issue here, "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter*, 129 S. Ct. at 377-78. At this preliminary stage, and in light of recent clear guidance from the Supreme Court, plaintiff must "establish that [it] is *likely* to suffer irreparable harm in the absence of preliminary relief." *Winter*, 129 S. Ct. at 374; *id.* at 375-76

(emphasis added). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 381. The "'possibility standard' is too lenient." *Id.* at 375. The result in this case, however, is not dependent on which standard is applied. For the reasons discussed below, when applying "federal standards" to the preliminary injunction elements, the Court concludes that defendants have overcome any presumption of irreparable harm that may be recognized by Colorado courts.

Big O relies on the "generally accepted position that breach of an exclusivity clause almost always warrants an award of injunctive relief." *Dominion Video Satellite*, 356 F.3d at 1262; *see* Pl.'s Reply Br. [Docket No. 54] at 8. That reliance, however, ignores the fact that "[d]espite the general acknowledgment that irreparable harm often arises from the breach of this type of agreement, courts do not automatically, nor as a matter of course, reach this conclusion. Rather, they examine whether the harms alleged by the party seeking the preliminary injunction are in fact irreparable." *Id.* at 1263.

Big O claims that defendants have violated the Lancaster and Palmdale Agreements by diverting customers to Budget Tires in Quartz Hill, but failed to offer any proof of such diversion. Edgar Aguilar, who works at the Big O franchise in Palmdale, admitted that he referred one caller (apparently a phony call from a Big O employee) to Budget Tires in Quartz Hill, but only because the caller stated that he was from out of town and was stranded in Quartz Hill with a flat tire. Rather than showing an intent to improperly divert business to Budget Tires, this isolated incident simply shows good

judgment and a sense of decency on Mr. Aguilar's part.  Although there were other calls

of this sort to the Lancaster and Palmdale stores, there was no evidence of any

referrals to any stores other than Big O stores.  Mr. Felix testified that he specifically

instructed his employees at the Lancaster and Palmdale locations not to divert any

customers away from the Big O franchises.

Plaintiff argues that Mr. Felix, as a franchisee, has access to information

regarding Big O's marketing strategy, including planned promotions.  Again, however,

Big O has not identified any evidence that Mr. Felix is using such information at the

Quartz Hill location to gain a competitive advantage, and Mr. Felix testified that he has

held no promotions or sales at the Quartz Hill location since the termination of his

franchise agreement.

Big O offered the expert testimony of Dr. Russell Mangum in support of its

argument that enforcement of the covenant not to compete would have no discernible

impact on competition in the relevant market for services that Big O stores provide.[8]  Dr.

---

[8]The Ninth Circuit has stated that "it is well established that broad covenants not
to compete are void unless they involve a situation where 'a person sells the goodwill of
a business . . . .'" *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1290
(9th Cir. 2009), *cert. denied*, *Improv West Assoc. v. Comedy Club, Inc.*, --- U.S. ----, 130
S. Ct. 145 (2009).  Yet, even in such a sale of business situation, such covenants "are
proscribed when it is probable that performance of the contract will foreclose
competition in a substantial share of the affected line of commerce." *Dayton Time Lock
Service, Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1, 6 (Cal. App. 2 Dist. 1975).
Plaintiff offered Dr. Mangum's testimony in support of its argument that enforcing the in-
term covenant not to compete would not "foreclose competition in a substantial share of
the affected line of commerce."  Dr. Mangum's testimony focused only on defining the
relevant market in which Budget Tires now operates and on whether eliminating the
business would foreclose competition among those businesses remaining in that
market.  While that may be relevant, he failed to address whether enforcing the
covenant not to compete would "prevent [defendants] from engaging in [their] business
or trade in a substantial section of the market," e.g., as in *Comedy Club*, where the

Mangum testified that the relevant market for tire and related services in which the Quartz Hill location functioned is the entire Lancaster, Palmdale, and Quartz Hill areas. He also testified that enforcing the in-term non-compete agreements against defendants, and thereby closing Budget Tires, would not adversely affect competition in the relevant market. However, Dr. Mangum's testimony also supports the conclusion that not enforcing the non-compete clauses – and thereby permitting Budget Tires to operate until this case is resolved on the merits – would have no material impact the competitive position of the Palmdale and Lancaster franchises.

Big O also argues that enforcement of the in-term covenant not to compete protects "the integrity of the Big O franchise system," *see* Docket No. 80 at 3, because, by violating the covenant not to compete, defendants are able to "'spy' on Big O's proprietary information . . . to use to his advantage at Quartz Hill." Docket No. 45 at 13. Big O contends that "[s]uch a situation strikes at the heart of the Big O system, citing, *inter alia*, the reasoning of *Bad Ass Coffee Company of Hawaii, Inc. v. JH Nterprises, LLC*, 636 F. Supp. 2d 1237, 1249 (D. Utah 2009) ("*BACH*"), and *Quizno's Corp. v. Kampendahl*, No. 01 C 6433, 2002 WL 1012997, at *7 (N.D. Ill. May 20, 2002). Those cases, however, involved post-termination covenants not to compete in situations where the franchise agreements were terminated early. One of the reasons those courts enforced the post-termination covenants was that the provisions provided an important disincentive to other franchisees who might seek to disregard their

---

"covenant not to compete applie[d] geographically to the contiguous United States, and [did] not end until 2019." *Comedy Club*, 553 F.3d at 1292-93; *see Great Frame Up Systems, Inc. v. Jazayeri Enterprises, Inc.*, 789 F. Supp. 253, 256 (N.D. Ill. 1992) (cited by *Comedy Club*, 553 F.3d at 1293).

contractual obligations.  *See Quizno's*, 2002 WL 1012997, at *7 ("Kampendahl's willful

violation of the Agreement sends a message to other franchisees that the Agreement

does not protect Quizno's and may be disregarded at will.").

Here, defendants have not terminated, or been terminated, prematurely, and Big

O is not seeking to enforce the post-termination covenant in the Quartz Hill Agreement.

Nothing prevents Big O from opening a new store in Quartz Hill.  Moreover, Big O has

not presented any evidence of any Big O franchisees who have multiple franchise

agreements with staggered termination dates, such as defendants, and who have a

franchise agreement set to expire during this litigation.  While the court in *BACH* noted

that franchisees are a close-knit community and may be "emboldened to follow in

Defendants' footsteps," 636 F. Supp. 2d at 1249, there is no reason to think that, even

if there were any franchisees similarly situated to defendants here, they would be

emboldened by this litigation as opposed to the much larger ongoing litigation in

California state court.

Big O is not permitted to rely on mere speculation.  *See RoDa Drilling*, 552 F.3d

at 1210 ("Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show

a significant risk of irreparable harm has demonstrated that the harm is not speculative'

and will be held to have satisfied his burden.") (citation omitted).  In short, Big O

presents no evidence of any specific harm it is actually suffering, but simply identifies

categories of harm it *could* theoretically suffer under a different set of circumstances.[9]

---

[9]This abstract notion of harm is reinforced by plaintiff's submissions.  For
example, plaintiff's supplemental brief [Docket No. 80] identifies the purpose and
benefits provided by covenants not to compete generally without supplying any basis to
conclude that plaintiff is being specifically harmed in this case.  Plaintiff has access to

Therefore, the only basis upon which a finding of irreparable harm could rest in this case would be the assumption that breaches of exclusivity clauses almost always warrant injunctive relief. The Tenth Circuit, however, has rejected the conclusion that "whenever a party enters into a contract containing some form of exclusivity provision, injunctive relief is automatic upon breach of the clause even when the breaching party has refuted every assertion of specific irreparable harm put forth by the opposing party." *Dominion Video Satellite*, 356 F.3d at 1265; *see BACH*, 636 F. Supp. 2d at 1249 ("[I]t is clear that [plaintiff] must show more than a violation of the provisions alone to show irreparable harm.") (citing *Dominion Video Satellite, Inc.*, 356 F.3d at 1262). Whether viewed as Big O's failure to show irreparable harm or defendants' successful rebuttal of the presumption identified in certain Colorado cases, *see Dominion Video Satellite*, 356 F.3d at 1265 n.7 (noting, after concluding that plaintiff had failed to show irreparable harm, that "the Colorado cases regarding irreparable harm findings in do-not-compete cases [did not] bolster Dominion's argument"), there has been no showing that Big O is likely to suffer irreparable harm in the absence of an injunction.

---

the sales figures at the three franchises (Lancaster, Palmdale, and the previous Quartz Hill Big O franchise) over the course of many years against which to compare Budget Tires' business, but such data does not suggest that defendants are benefitting in any way at the Quartz Hill location. The Court recognizes that damage to intangible benefits can often be difficult to quantify. However, given the absence of evidence that defendants are diverting sales and given Big O's failure to demonstrate any basis for believing that Budget Tires has benefitted from access to Big O's proprietary information, there is no basis to presume damage to Big O's intangible assets. Even if some intangible damage to Big O's operations is presumed, such as having Mr. Felix participate in Big O conference calls regarding sales and promotions, such damage does not carry Big O's burden on the issue of irreparable harm.

The Court declines to address the remaining preliminary injunction elements, as the resolution of them will have no bearing on the outcome. *See In re Qwest Communications International, Inc. Securities Litig.*, 241 F. Supp. 2d 1119, 1123 (D. Colo. 2002) (declining to enter temporary restraining order, even "assum[ing], without deciding, that the plaintiffs have a substantial likelihood of success on the merits," because plaintiffs failed to establish irreparable harm and that the balance of equities was in their favor); *Russell v. Department of Air Force*, 915 F. Supp. 1108, 1122 (D. Colo. 1996) ("Having decided that [plaintiff] has not shown clearly that he has a substantial likelihood of success on the merits, I need not address the remaining factors. . . ."); *see also Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999) (noting that if a plaintiff fails to meet the "threshold requirements" of showing "likelihood of success and irreparable injury," "the court's inquiry is at an end and the injunction must be denied") (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)); *cf. Dominion Video Satellite*, 356 F.3d at 1266 n.8 (declining to address other preliminary injunction factors after deciding that the district court's finding of irreparable harm was in error).

After *Winter*, it is clear that the showing of irreparable harm cannot be lessened in light of a stronger showing on the merits. Although any discussion of the merits would be the Court's "preliminary findings of fact and conclusions of law," and "[o]bviously the findings and conclusions may be different after a trial on the merits," *Hartford House Ltd. v. Hallmark Cards Inc.*, 647 F. Supp. 1533, 1536 (D. Colo. 1986), nothing is gained by wading into an analysis that will have no effect even at this preliminary juncture. *Cf. McData v. Brocade Communications Systems, Inc.*, 233 F.

Supp. 2d 1315, 1320 (D. Colo. 2002) (stating, in a patent case, that "[w]hen these weighty matters need not be addressed to decide a request for preliminary relief, they are most appropriately resolved at a full trial on the merits rather than in an expedited proceedings such as this.").

Finally, plaintiff has identified nothing about the balance of the equities or the public interest that would alter the conclusion reached here.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion to take judicial notice [Docket No. 44], which the Court construes as a motion to supplement, is GRANTED.  It is further

**ORDERED** that defendants' motion to dismiss, transfer, or stay [Docket No. 43] is DENIED.  It is further

**ORDERED** that plaintiff's motion for preliminary injunction [Docket No. 45] is DENIED.


DATED July 12, 2010.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

26