IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 10-cv-00362-PAB-KLM

BIG O TIRES, LLC, a Nevada limited
liability company f/k/a BIG O TIRES, INC.,
a Colorado corporation,

    Plaintiff,

v.

FELIX BROS., INC., a California corporation,
RALPH FELIX, an individual,
ARMIDA FELIX, an individual,
ANGEL FELIX, an individual, and
MARIA FELIX, an individual,

    Defendants.

---

# ORDER

---

    This matter is before the Court on the motion for summary judgment [Docket No. 105] filed by plaintiff Big O Tires, LLC ("Big O") and the motion to dismiss or stay [Docket Nos. 119, 121] filed by defendants . The motions are fully briefed and ripe for disposition.

## I. BACKGROUND[1]

    Big O is a franchisor of automobile tire stores. Big O enters into franchise agreements governing each franchise location. Pursuant to the agreements, franchisees are given the right to use Big O trademarks, trade dress, and licensed methods for a term of years in exchange for franchisees making royalty payments to

---

[1] Unless otherwise indicated, the following facts are not in dispute.

Big O.  Big O owns trademarks on "BIG-O" and "BIG O TIRES" and uses trade dress which includes "decorative black and red stripes, a red and white interior, red and black employee uniforms, point of purchase materials and a distinctive font."  Docket No. 105 at 2, ¶ 3; Docket No. 110 at 2, ¶ 3.  Although the parties dispute the strength of Big O's system of advertising and selling tires, defendants do not dispute that Big O's trademarks and trade dress have been advertised widely.

On June 30, 1999, defendant Felix Bros., Inc. ("Felix Bros.") opened a Big O franchise in Quartz Hill, California after entering into a Big O franchise agreement ("Quartz Hill Agreement").  Defendants Ralph, Armida, Angel, and Maria Felix ("the Felixes") all signed the Quartz Hill Agreement as guarantors.  Manzano, Inc. became a Big O franchisee in Palmdale, California ("Palmdale Agreement") on April 25, 2001.  Ralph and Armida Felix signed the Palmdale Agreement as guarantors.  On August 23, 2001, Felix Tires, Inc., with Ralph and Armida Felix as guarantors, became a Big O franchisee in Lancaster, California ("Lancaster Agreement").

The Quartz Hill Agreement expired at the end of December 2009.  The Quartz Hill Agreement imposed certain post-termination obligations on Felix Bros., such as de-identifying with Big O and returning proprietary material to Big O.  Big O contends that Felix Bros. did not promptly comply with its post-termination obligations.  Defendants respond that they immediately began operating the business at the Quartz Hill location under the name Budget Tires and Automotive.  Furthermore, defendants assert that any delay in removing Big O trademarks and trade dress was on account of ongoing negotiations with Big O regarding the possibility of negotiating a single termination date for all three franchises or a buyout by Big O.  Mr. Felix avers that he left the trademarks

and trade dress in place in the event that Big O would take over the franchise. In addition to seeking recovery for trademark and trade dress violations, plaintiff also contends that "Felix Bros. and the Felixes failed to pay Big O all sums due upon expiration of the Quartz Hill Agreement" in the amount of $14,427.02 as of April 7, 2011. Ralph Felix admits to a debt arising out of the Quartz Hill location, but testified that he believed he owed a lesser amount. *See* Docket No. 110-5 at 2.[2]

In its motion, Big O also contends that defendants' continued operation of a tire business at the Quartz Hill location violates an in-term non-compete provision found in both the Palmdale and Lancaster Agreements, which reads as follows:

> Except for any businesses already operating and identified on the Summary Pages, during the term of this Agreement, Franchisee and any guarantor(s) hereof covenant, individually, not to engage in or open any business, at any location, other than as a Franchisee of the Big O System, which offers or sells tires, wheels, shock absorbers, automotive services, or other products or services which compete with Big O Products and Services. The purpose of this covenant is to encourage Franchisee and any guarantor(s) hereof to use their best efforts to promote the Big O System, its Products and Services, to protect its information and trade secrets, and to generate a successful business at the Store.

*See, e.g.*, Docket No. 105-5 at 25, § 17.01. In addition, plaintiff seeks payment of unpaid royalty fees pursuant to the Palmdale and Lancaster Agreements in the amounts of $21,931.89 and $40,929.15 respectively, as well as an outstanding balance of $108,708.76 for consigned products pursuant to a Consignment Agreement entered into for the Palmdale location which Ralph and Armida Felix signed as guarantors. Defendants admit that money is owed pursuant to the agreements, but dispute the amounts requested by plaintiff.

---

[2]Defendants have supplied no statements or other financial records.

3

Other than the present action, there is ongoing litigation between the parties in Superior Court in Los Angeles County, California. On December 2, 2009, two and a half months before the present case was filed, defendants Ralph Felix and Felix Bros., Inc. joined a number of other Big O franchisees in a lawsuit against Big O for breach of the franchise agreements and other business torts. In that action, Big O has filed counterclaims against defendants alleging the same breaches of the franchise agreements at issue in this case. *See* Docket No. 121-2 at 32-44. Big O, however, did not file counterclaims for trademark, trade dress, and trade secrets violations.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss or Stay

After plaintiff filed its motion for summary judgment, defendants filed a motion to dismiss or stay this action [Docket Nos. 119, 121]. As grounds for dismissal of plaintiff's case, defendants contend that plaintiff is asserting claims that were compulsory counterclaims in the California state court action. As an initial matter, to the extent defendants seek dismissal, their motion is untimely. Dispositive motions were due on April 7, 2011. *See* Docket No. 104. Defendants filed their motion to dismiss on September 28, 2011 [Docket No. 119] and an amended version of their motion to dismiss on October 6, 2011 [Docket No. 121]. Defendants did not request or receive leave to file their motion to dismiss out of time.

Moreover, defendants have not complied with the procedural requirements for asserting their compulsory counterclaim defense. Pursuant to California law, "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint

any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." Cal. Civ. Proc. Code § 426.30(a); *see Valley View Angus Ranch, Inc. v. Duke Energy Field Services, Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007) ("[W]e look to state law to determine if a claim is a compulsory counterclaim, and, if so, the effect of a failure to raise such a claim."); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4414 (2d ed. 2011) ("[F]ailure to make a counterclaim made compulsory in a state proceeding by state law precludes later action on the claim in federal court.").[3] However, a party must plead a section § 426.30 defense and, as plaintiff points out, *see* Docket No. 125 at 4, defendants "did not raise the issue of compulsory counterclaims in their amended answer." Nor did defendants raise the defense in their first motion to dismiss [Docket No. 43] or the final pretrial order [Docket No. 114]. *See* Docket No. 82 at 13-14 (where, in addressing defendants' request for a stay, the Court noted that, "[a]lthough there are overlapping issues in the two actions, defendants have not argued that plaintiff's claims in this case constitute compulsory counterclaims in the state court

---

[3]Plaintiff asserts that any compulsory counterclaims in the state action cannot yet be barred in this action because a "fundamental requirement of [section] 426.30 is that the initial action be concluded to final judgment." Docket No. 125 at 5. However, "[s]ection 426.30 makes no mention of any requirement of a final judgment." *Pietak v. State Farm Fire and Cas. Co.*, 189 F.3d 474 (table op.), 1999 WL 599478, at *2 (9th Cir. Aug. 10, 1999) ("The purpose of the provision is 'to require reciprocal rights flowing from a common source to be determined in a single action, thus avoiding not only unnecessary vexatious litigation, but also the contingency of conflicting judgments . . . .' This policy would be undermined if a party against whom a complaint had been filed were permitted to commence another action against the complainant alleging related causes of action anytime before a judgment was final.") (citation omitted).

action"). *See Hulsey v. Koehler*, 218 Cal. App. 3d 1150, 1158 (Cal. App. 3d Dist. 1990) ("Since we find that a defense based on section 426.30 must be specially pleaded, we reject Koehler's contention that her affirmative defense of failure to state facts sufficient to constitute a cause of action effectively incorporated the section 426.30 defense and was sufficient to raise it."). Defendants have not sought to amend their pleadings or the final pretrial order. *See* Docket No. 114 at 8 ("Hereafter, this Final Pretrial Order will control the course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.").

In the alternative, defendants request that the Court stay this case, relying upon *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), where the Supreme Court stated that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Defendants' request for a stay, however, is more appropriately analyzed by reference to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).[4] As the court noted in *Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby N.Y., LLC*, 2010 WL 1030121, at *3 (M.D. Fla. March 17, 2010), "*Landis* . . . arose in the context of a federal district court staying a case in deference to another federal district court, as opposed to a state court. Indeed, in *Colorado River*, the Supreme Court specifically distinguished *Landis* (and cases like it),

---

[4] *See Hamilton v. Emerald Isle Lending Co.*, 2011 WL 1990568, at *11 n.2 (D. Colo. April 6, 2011) ("The court may address abstention under the *Colorado River* doctrine *sua sponte*.") (citing *Reinhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir. 1999)).

noting that the 'difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" (citations omitted).

The *Colorado River* doctrine allows federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" where the federal court would otherwise have concurrent jurisdiction with the state court. *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (citing *Colorado River*, 424 U.S. at 817). In such a situation, the federal court may exercise its discretion and stay or dismiss the federal suit "for reasons of wise judicial administration." *Id.* at 1081 (quoting *Colorado River*, 424 U.S. at 817-18). Application of the doctrine is appropriate only in "exceptional" circumstances. *Id.*

In order to defer to a state court under the *Colorado River* doctrine, a federal court must first assess whether the state court suit is in fact "parallel" to the federal suit. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)). In the Tenth Circuit, a court assessing whether state and federal proceedings are parallel should consider the actual posture of the state proceedings, instead of considering "how the state proceedings could have been brought in theory." *Id.* In this case, the Court finds that plaintiff's breach of contract claims against defendants are clearly parallel to the identical breach of contract counterclaims it has asserted against the same parties in the California action. On the

7

other hand, plaintiff's trademark, trade dress, and trade secrets claims, based on alleged violations of federal and Colorado law, have only been asserted in this Court.

Having determined that the proceedings are, at least in part, parallel, the court "must then determine whether deference to state court proceedings is appropriate" by looking at a series of nonexhaustive factors laid out in *Colorado River*: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id.* at 1082. Other relevant factors may be "the vexatious or reactive nature of either the federal or the state action," "whether federal law provides the rule of decision," "the adequacy of the state court action to protect the federal plaintiff's rights," and "whether the party opposing abstention has engaged in impermissible forum-shopping." *Id.* (citations omitted).[5]

The Court concludes, upon application of the relevant factors, that the *Colorado River* doctrine applies. The first *Colorado River* factor is inapplicable here. Turning to the second factor, defendants contend, and plaintiff does not dispute, that litigating this matter in two forums presents a significant hardship. *See* Docket No. 121 at 15.[6]

---

[5]Upon concluding that the *Colorado River* doctrine applies, the preferred remedy in the Tenth Circuit is a stay of the federal case instead of a dismissal. *Id.* at 1083. "In the event the state court proceedings do not resolve all federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without plaintiff having to file a new federal action." *Health Care & Retirement Corp. of America v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1204 (D. Kan. 2004) (citing *Fox*, 16 F.3d at 1083).

[6]To the extent that hardship results from the inconvenience of litigating the matter in two states, defendants have never sought a change of venue pursuant to 28 U.S.C. § 1404(a). As the Court has noted before, *see* Docket No. 82 at 13 n.6, although the Court is empowered to address venue pursuant to § 1404(a) *sua sponte*,

Furthermore, plaintiff has invoked the state court's jurisdiction over identical breach of contract claims in the earlier-filed state case. The potential for piecemeal and inconsistent rulings in such a situation weighs in favor of a stay. Plaintiff was granted summary judgment in a companion state case to the one presently pending between it and defendants in California. While awaiting a ruling on appeal of the order granting it summary judgment, plaintiff consented to a stay of the California action. Yet, it now seeks to have this Court resolve identical claims during the pendency of that stay. That fact, together with the filing of breach of contract claims here that were available counterclaims in the earlier-filed California action, raises the specter of forum-shopping.[7]

Moreover, there is no indication that the state court will not protect the plaintiff's rights in regard to the breach of contract claims or that the state forum will be otherwise prejudicial to plaintiff. *Cf. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (finding that to "stay [a case] under *Colorado River*, [the Court] presumably [must] conclude[ ] that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties"). With that said, plaintiff's trademark, trade dress, and trade secret rights will be

---

the Court declines to do so in the absence of a specific request and briefing of the issue.

[7]Defendants also inform the Court that an administrative proceeding was initiated against Big O by the California Department of Corporations on September 2, 2011. *See* Docket No. 121-4 (letter from Department of Corporations to Big O regarding allegations it violated the California Franchise Investment Law); *cf. Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992) ("*Burford* [*v. Sun Oil*, 319 U.S. 315 (1943)] abstention arises when a federal district court faces issues that involve complicated state regulatory schemes.").

unaffected by any adjudication in state court. The Supreme Court made clear in *Moses H. Cone* that, "[w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," and, "[t]hus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* Such language should not be read, however, to preclude the Court from entering a partial stay of the breach of contract claims that are pending in state court, while proceeding with the trademark, trade dress, and trade secrets claims. *See Giles v. ICG, Inc.*, 789 F. Supp. 2d 706, 714 (S.D. W. Va. 2011) (finding "unpersuasive the plaintiffs' argument that a stay is categorically impermissible where a plaintiff has asserted both state and federal causes of action" and concluding that the "grant of a partial stay will efficiently sever the issues to be determined by this Court and the Court of Chancery so that no court renders duplicative holdings"); *In re Countrywide Financial Corp. Derivative Litigation*, 542 F. Supp. 2d 1160, 1171 (C.D. Cal. 2008) (rejecting the argument that pursuant to *Colorado River* a "stay on any single claim is impermissible where the state court case cannot 'end the litigation'" because it found "support only in excerpting from cases out of context" and granting a partial stay of "claims that are proceeding in nearly identical form in Delaware, under the same laws"); *see also Krieger v. Atheros Communications, Inc.*, 776 F. Supp. 2d 1053, 1063 (N.D. Cal. 2011).[8] Proceeding here on claims that are not presently before the state

---

[8]As a relative matter, the recovery plaintiff seeks for its trademark and trade dress claims are significantly more limited than its breach of contract claims.

court strikes an appropriate balance between the obligation to exercise jurisdiction and the inefficiency, inconvenience, and potential for piecemeal litigation presented by the adjudication of identical claims.

In light of the foregoing, the Court will bifurcate plaintiff's breach of contract claims, which are plaintiff's fourth through seventh claims for relief, from the rest of this action and stay proceedings as to the contract claims. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."); *see also Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999) (stating that district courts have "'broad discretion in deciding whether to sever issues for trial'") (citation omitted). Plaintiff's motion for summary judgment, to the extent it seeks resolution of its breach of contract claims, will be denied without prejudice to refiling upon the eventual lifting of the stay. The Court, therefore, will address only that aspect of the motion for summary judgment dealing with plaintiff's trademark and trade dress claims.[9]

### B. Plaintiff's Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[9]Plaintiff has also asserted a trade secrets claim arising under Colorado law against defendants. Despite seeking entry of judgment, however, plaintiff fails to brief the question of whether it is entitled to summary judgment on its trade secrets claim. Therefore, to the extent plaintiff's motion seeks summary judgment on that claim, the motion must be denied.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### *2. Trademark and Trade Dress Infringement*

Plaintiff contends that defendants infringed its trademark and trade dress when they continued to operate a tire business at the Quartz Hill location after expiration of the franchise agreement. Section 43(a) of the Lanham Act provides a federal cause of action for trademark and trade dress infringement. *See* 15 U.S.C. § 1125(a). "Under § 43(a) of the Lanham Act, a plaintiff has a cause of action against any person whose use of a word, symbol or device is likely to cause confusion regarding the source or origin of the plaintiff's goods." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (citing 15 U.S.C. § 1125(a)(1)(A); *Wal-Mart Stores, Inc. v. Samara*

*Bros.*, 529 U.S. 205, 209 (2000)). "The elements of a trademark infringement claim are that (1) the plaintiff has a mark that is protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers." *B2A, LLC v. Commlog, LLC*, No. 09-cv-00528-WJM-BNB, 2011 WL 5569496, at *3 (D. Colo. Nov. 16, 2011) (citing *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004)). To prevail on a trade dress claim, plaintiff must establish that "(1) the trade dress is non-functional, . . . (2) there is a likelihood of confusion among consumers as to the source of the competing products, . . . [and] [(3)] the trade dress is inherently distinctive or has acquired secondary meaning." *General Motors Co. v. Urban Gorilla, LLC*, 2010 WL 5395065, at *13 (D. Utah Dec. 27, 2010); *see Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988). Trade dress includes a product's "overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty*, 304 F.3d at 977 (citation omitted). Defendants do not dispute that plaintiff has established the elements of both its trademark and trade dress claims.

Defendants contend, however, that their conduct was "defensible," arguing that plaintiff's are estopped from asserting the claims against them. *See* Docket No. 110 at 9. Defendants point out that they began taking steps to comply with their post-termination obligations, including de-identifying the Quartz Hill location as a Big O store. Defendants "secured a license under a new business name and began removing signs, painting, removing brochures, legally changing the business name." Docket No. 110 at 2-3, ¶ 10. Ralph Felix states that he held off on completely de-identifying the Quartz

Hill location because, during January and February 2010, he believed Big O was considering whether it would take over all three stores, leading him to believe that de-identification need not happen until that issue was resolved.

In a December 14, 2009 letter informing plaintiff that he would not be renewing the Quartz Hill Agreement, Mr. Felix apparently requested early termination of the Palmdale and Lancaster agreements or an extension of the three agreements so that they would have a common termination date. See Docket No. 110-4 at 2, ¶¶ 4-6.[10] Mr. Felix requested a response by December 31, 2009. In a letter dated December 29, 2009, Big O's Western Division Vice President Richard S. O'Neil informed Mr. Felix that Big O had not received the letter until December 28, 2009 and would need until January 15, 2010 to respond. See Docket No. 110-4 at 4. The December 29 letter did not reject the possibility of plaintiff purchasing the franchises or demand de-identification while considering the proposals.

On January 15, 2010, Brian Maciak, Vice President and General Counsel of Big O, responded to Mr. Felix's letter. Mr. Maciak informed plaintiff's counsel that Big O "fully expect[ed] [Mr. Felix] to comply" with his in-term and post-term obligations under the franchise agreements and that Big O rejected Mr. Felix's proposal that he be permitted to terminate the Palmdale and Lancaster Agreements early. See Docket No. 105-17 at 1. Yet, Mr. Maciak also told plaintiff that "he should feel free to submit a modified proposal under which he essentially buys out of his obligations under these agreements." Docket No. 105-17 at 1.

---

[10]Defendants failed to supply a copy of the December 14, 2009 letter along with Mr. Felix's declaration at Docket No. 110-4.

14

The letter did not address the proposal that Big O purchase the three locations. But defendants assert that Mr. Felix's proposal that "Big O . . . buy all three stores from him to facilitate a common ending date," Docket No. 110 at 4, ¶ 10, was discussed with Mr. O'Neil as late as on February 8, 2010.  See Docket No. 110-6 at 5.  According to Mr. Felix, Mr. O'Neil informed him that Big O was not interested in purchasing the franchises, see Docket No. 110-6 at 5, but that, nevertheless, Big O "may have something in the works in regards to negotiating another determination."  See id. at 6. Furthermore, Mr. Felix declares that, on February 8, 2010, "Mr. O'Neil promised to inform upper-level management at Big O about [his] offer to sell [his] stores," and, as a result, Mr. Felix "left all Big O signs and other references in[tact] in the event that Big O would take them over."  Docket No. 108-9 at 3, ¶ 6.

During these apparently ongoing negotiations, a representative of Big O called Mr. Felix on February 11, 2010 to schedule an appointment to "go over the post termination obligations."  Docket No. 110-6 at 6.  The appointment was scheduled for February 19, 2010.  See id.  Mr. Felix further testified that, in advance of that meeting, he "had been already de-identifying and had started to remove some of the items," and had "scheduled a sign company to come over . . . and take down all of the signage." Docket No. 110-6 at 7-8.  Plaintiff filed the present lawsuit on February 19, 2010, see Docket No. 1, and Mr. Felix declares that he "fully de-identif[ied] from Big O by February 26, 2010."  Docket No. 108-9 at 3, ¶ 7; cf. Docket No. 105-14 at 10 (where Ralph Felix testifies that the re-branding was not complete until the first week of March).[11]

---

[11]Defendants have supplied the Court with a letter from Mr. O'Neil dated March 5, 2010 which outlines a settlement proposal whereby the franchise agreements would

15

The record contains evidence that Big O was, at a minimum, sending mixed signals to Mr. Felix during January and February 2010. The Court concludes there is a genuine dispute of material fact regarding whether plaintiff acquiesced in the use of its marks during the ongoing negotiations in January and February 2010. "Acquiescence is an affirmative defense that requires a 'finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant.'" *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547-48 (10th Cir. 2000) (citation omitted); *Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 409 (S.D.N.Y. 2006) ("A trademark holder 'communicates active consent by conduct that amounts to an explicit or implicit assurance that plaintiff, with knowledge of defendant's conduct, will not assert its trademark rights.'") (citation omitted).[12] As defendants point out, plaintiff had previously negotiated an extension of the Quartz Hill franchise agreement after the original

---

all be extended so as to have a uniform termination date. *See* Docket No. 110-3 at 3. Plaintiff contends that the letter is inadmissible pursuant to Fed. R. Evid. 408, which provides that "conduct or statements made in compromise negotiations" are "admissible . . . either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a)(2); *cf. PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 115 (2d Cir. 2008) (stating that "it seems clear that the firm prohibition [of Rule 408] should not apply to the affirmative defense of estoppel by acquiescence, which depended on issues distinct from the elements of the claim of infringement"). Plaintiff further argues that, even if admissible, the letter is irrelevant because it falls outside the time period for which plaintiff seeks to hold defendants responsible. The letter, however, has some probative value in support of defendants' contention that negotiations regarding the termination of the Quartz Hill Agreement were ongoing in the first two months of 2010. The Court need not resolve these issues, as the record otherwise contains evidence sufficient to overcome summary judgment.

[12]In their answer to plaintiff's amended complaint, defendants asserted the affirmative defense of acquiescence. *See* Docket No. 90 at 8.

16

termination date. There is no indication that defendants were expected to de-identify during those earlier negotiations, only to re-identify upon a granting of the extension. To the extent plaintiff was aware of the continued operation of the business and was actively engaging in discussions regarding the possibility of the Quartz Hill location remaining a Big O franchise in some form or another, a jury could conclude that plaintiff implied that it would not assert its trademark and trade dress rights until all negotiations over termination of the Quartz Hill franchise were complete. Consequently, plaintiff has not established its entitlement to summary judgment on its trademark and trade dress claims.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' motion to dismiss or stay [Docket Nos. 119, 121] is GRANTED in part and DENIED in part. It is further

**ORDERED** that plaintiff's breach of contract claims are STAYED and, to the extent plaintiff seeks summary judgment on those claims, its motion for summary judgment [Docket No. 105] is DENIED without prejudice to refiling upon lifting of the stay of those claims. It is further

**ORDERED** that, to the extent plaintiff seeks summary judgment on the trademark, trade dress, and trade secrets claims, its motion for summary judgment [Docket No. 105] is DENIED. It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 42(b), the trial scheduled to commence on January 9, 2012 will be limited to plaintiff's trademark, trade dress, and

trade secrets claims.

DATED December 13, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge